IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-00154-WCM

GIANNA MARIE VEJMOLA,            )
                                  )
            Plaintiff,            )
                                  )    MEMORANDUM OPINION
v.                                )    AND ORDER
                                  )
COMMISSIONER OF THE SOCIAL       )
SECURITY ADMINISTRATION,         )
                                  )
            Defendant.            )
_____   )

This matter is before the Court on Plaintiff's Motion for Summary Judgment and the Commissioner's "Motion for Judgment on the Pleadings," which the Court construes as a Motion for Summary Judgment (Docs. 12, 13).[1]

I.  Procedural Background

In December of 2016, Plaintiff Gianna Marie Vejmola ("Plaintiff") filed an application for supplemental security income. Transcript of the Administrative Record ("AR") at 179-188. Plaintiff alleges disability beginning December 28, 2016. AR 36.

On May 30, 2019, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an

---

[1] The parties have consented to the disposition of this matter by a United States Magistrate Judge. Doc. 11.

1

unfavorable decision. AR at 10-30. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "neuropathy and edema, depression, anxiety, and post-traumatic stress disorder." AR at 15. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform medium work . . . except she is limited to simple, routine, and repetitive tasks, which are performed in a work environment free of fast-paced production requirements. She can make simple, work-related decisions. She can tolerate few, if any, work place changes. She is capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting. She can perform simple tasks for two-hour blocks of time with normal rest breaks during an eight-hour workday. She can have occasional interaction with the public and coworkers.

AR at 18.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 24-25.

### III. Plaintiff's Allegations of Error

Plaintiff contends that the ALJ failed to weigh the opinions of Mary Puckett, PAC and Todd Morton, PhD properly.

### IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh

conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

A. Ms. Puckett

A December 20, 2016 treatment note[2] reflects that, upon exam, Plaintiff's right ankle was "significantly swollen circumferentially, with a large erythematous, hot area on the medial side." AR 303. Plaintiff was, however, able to "move the ankle in all planes" and "bear weight on the right foot." Id. Plaintiff was provided with medications and "advised to keep right leg elevated, preferably above level of heart, 20 minutes out of every 4 hours." Id.[3] The ALJ considered the advice to elevate Plaintiff's leg to be an opinion of

---

[2] This note reflects treatment eight days prior to Plaintiff's alleged disability onset date of December 28, 2016.

[3] Plaintiff does not cite any other evidence in the record regarding the need to elevate her leg, and this recommendation does not appear in any of Ms. Puckett's subsequent treatment notes.

Plaintiff's treating medical health provider, Ms. Puckett,[4] and gave the opinion "little weight." AR 22.[5]

Plaintiff argues that the ALJ "rejected PA Puckett's opinion because of her status as a physician's assistant, thus designating her as a non-acceptable medical source." Doc. 12-1. See Thomas v. Berryhill, No. 2017 WL 1047253, at *7 (E.D.N.C. Feb. 15, 2017) ("The Regulations require an ALJ to consider all medical evidence, regardless of its source.") (citing 20 C.F.R. § 404.1513; SSR 06–39 at *4)); Argeris v. Colvin, 195 F.Supp.3d 812, 815 (E.D.N.C. July 18, 2016) ("this Court has previously held that 'where a physician's assistant has treated a patient under the supervision of physicians and renders an opinion based on the course and scope of such supervised treatment, the physician's assistant's opinion deserves the same weight as that of a treating physician'") (citation omitted).

Although the ALJ did note that Ms. Puckett was "not an acceptable medical source," he also explained that he gave Ms. Puckett's opinion little

---

[4] The note is signed by Ms. Puckett and indicates that Plaintiff was "examined and interviewed in conjunction with Dr. Trigg." AR 303.

[5] The ALJ considered the December 20, 2016 treatment note as being a medical opinion, and no party has argued otherwise. Therefore, the undersigned has not considered whether the note meets the definition of a "medical opinion" under the Social Security Regulations. See Massey v. Saul, 1:19 CV 152 WCM, 2020 WL 4569606 at *3 (W.D.N.C. Aug. 7, 2020) (considering whether treatment note which included leg elevation as part of plaintiff's treatment plan constituted a "medical opinion" under the Regulations).

weight because it was inconsistent with "subsequent opinions indicating similar restrictions" as well as the opinion of the consultative examiner, Timothy Johnston, D.O. AR 22. Accordingly, the ALJ did not discount Ms. Puckett's opinion solely based on Ms. Puckett's status as a physician's assistant.

Further, substantial evidence supports the ALJ's treatment of the December 20, 2016 note. In particular, the ALJ afforded "great weight" to the opinion of the consultative examiner, Dr. Johnston, who concluded that Plaintiff had "no need…to utilize any type of assistive device," had normal strength in all extremities, and could "participate in light to moderate work activity." See AR 22 (citing AR 347-348). Additionally, the ALJ correctly noted that while subsequent treatment records reflected "intermittent swelling and edema," Plaintiff also had full range of motion and full sensation in her extremities, and "was treated conservatively with medication intervention and recommendations for increased exercise." AR 20.

### B. Dr. Morton

Plaintiff also contends that the ALJ failed to weigh the opinion of Dr. Morton properly and thereby erred in finding that Plaintiff is "capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting." See AR 18.

6

Dr. Morton completed psychological evaluations of Plaintiff on March 31, 2016, AR 294-298, and May 4, 2017. AR 362-366. In his report discussing Plaintiff's May 4, 2017 evaluation, Dr. Morton estimated that Plaintiff's "intellectual abilities are in the low average range," that her recent and remote memories were intact, and that she had a "low average fund of information…" AR 365.[6] Dr. Morton concluded that Plaintiff "would not be able to maintain her attention on a simple repetitive task for an extended period of time" and that while she could understand simple work instructions, she would have "moderate difficulties with maintaining a pace of work that most employers require due to her depression." AR 366; see also (AR 297-298 (concluding, following the March 31, 2016 evaluation, that Plaintiff "would not be able to maintain her attention on a simple repetitive task for an extended period of time" and that "she would be able to understand work instructions but have difficulty recalling them and carrying them out")).

The ALJ gave Dr. Morton's opinions "little weight," finding that the record did not support such "significant limitations," and that Dr. Morton's opinions were based on Plaintiff's "subjective complaints and not on clinical

---

[6] Dr. Morton reached similar conclusions following his March 31, 2016 evaluation. See AR 297 (estimating that Plaintiff's intellectual abilities were "in the borderline to low average range," that her "short term memory was somewhat poor and remote memories were intact," that she had a "low average fund of information" and average insight and judgment regarding her mental health problems).

observations," and were "inconsistent with mental examinations that generally showed normal findings." AR 22-23.

Plaintiff points out that courts have recognized that a mental health professional may, at least to a certain extent, base his or her opinion on a patient's subjective reports. See Hare v. Astrue, No. 7:08–CV–36–FL, 2009 WL 873993, at *3 (E.D.N.C. March 24, 2009) ("On one level, plaintiff is obviously correct that a psychiatrist must base his or her findings on the subjective reports of a patient. Psychology and psychiatry necessarily rely on such subjective reports because the types of disorders they deal with are not usually susceptible to direct physical observation as in other medical arenas").

Here, however, the ALJ did not assign little weight to Dr. Morton's opinion solely because it was based on Plaintiff's subjective complaints. Rather, the ALJ determined that the "extreme limitations" suggested by Dr. Morton were not supported by Dr. Morton's objective observations. See AR 23 (finding that while Dr. Morton's findings "supported some limitations, the extreme limitations that he indicated exceed what would be supported by his clinical findings").

Additionally, the ALJ determined that the limitations set forth by Dr. Morton were "inconsistent with mental status examinations that generally showed normal findings." AR 23; see also AR 21 (citing AR 447 (November 20, 2017 treatment note indicating Plaintiff had noticed an improvement with

8

Case 1:20-cv-00154-WCM Document 16 Filed 10/01/21 Page 8 of 10

depression since taking different medications), AR 477 (February 25, 2019 diagnostic assessment note recording Plaintiff's current mental status as depressed, with appropriate affect and "focused" attention/concentration)).[7]

Finally, Plaintiff asserts that the ALJ's treatment of the state agency consultants' opinions regarding her mental limitations was improper. Specifically, Plaintiff argues that despite finding that she had greater mental impairments than described by these consultants, see AR 22, the ALJ neglected to incorporate greater limitations. Doc. 12-1.

On both initial review and reconsideration, the state agency consultants concluded that Plaintiff could "maintain concentration, persistence, and pace to stay on task for 2-hour periods during a typical 8-hour workday, as required to perform simple, routine, repetitive tasks" and that Plaintiff could perform such tasks in "settings that do not require intensive interpersonal relating." AR 73 & AR 89-90. It appears that Plaintiff's RFC incorporated these limitations. AR 18. See Norton v. Saul, 1:20-cv-00060-KDB, 2021 WL 861710, at *3 (W.D.N.C. March 8, 2021) ("The ALJ's reliance on the opinion of the state agency medical consultant that [plaintiff] could complete simple tasks even with moderate limitations in CPP satisfies the explanation necessary to

---

[7] Plaintiff points to various records indicating that she suffered from depression and other mental health issues. Plaintiff does not, however, point to specific evidence of additional functional limitations in these records. See Doc. 12-1 at 14-15.

9

support the RFC limitations"); Del Vecchio v. Colvin, No. 1:14cv116-RLV, 2015 WL 5023857, at *6 (W.D.N.C. Aug. 25, 2015) (ALJ's explicit reliance on non-examining state agency consultant's mental functional capacity assessment adequately explained "why Plaintiff's limitations in concentration, persistence, or pace did not translate into any additional restrictions....").

In addition, neither agency consultant found that Plaintiff had adaptive limitations. AR 73 & 90. However, the ALJ limited Plaintiff to working in an environment "free of fast-paced production requirements" with "few, if any, work place changes." AR 18. Therefore, it appears that the ALJ did include functional limitations beyond those found by the state agency consultants.

## VI. Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment Doc. 12) is **DENIED** and the Commissioner's Motion for Judgment on the Pleadings (Doc. 13) is **GRANTED**.

Signed: October 1, 2021

W. Carleton Metcalf
United States Magistrate Judge